**MILT FERGUSON MOTOR COMPANY and General Motors Corporation, Appellants,**

v.

**Norbert ZERETZKE and Jerry A. Zeretzke, Appellees.**

No. 04–91–00038–CV.

Court of Appeals of Texas, San Antonio.

Dec. 31, 1991.

Kathleen Gillette Rosenblum, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, for appellants.

Peter Torres, Jr., Law Offices of Peter Torres, Jr., San Antonio, for appellees.

Before BUTTS, CHAPA and STEPHENS[1], JJ.

## OPINION

STEPHENS, Justice (Retired).

Appellants, Milt Ferguson Motor Company and General Motors Corporation bring ten points of error in support of their appeal from a joint and several judgment against them in a suit brought by Norbert and Jerry A. Zeretzke, Appellees. Suit was for damages for breach of contract, breach of the duty of good faith and fair dealing, failure of consideration, and violations of

---

1. The Honorable Bill J. Stephens, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

the Texas Deceptive Trade Practices—Consumer Protection Act, arising out of the purchase and ownership of a 1987 Pontiac Grand Am automobile. Appellants counterclaimed against appellees for attorney's fees under Section 17.50 of the Texas Deceptive Trade Practices—Consumer Protection Act. Trial before the court resulted in a joint and several judgment in the amount of $29,500.00.

Points of error number one through five, seven, eight, and ten complain that there is no evidence or insufficient evidence to support certain findings of fact and conclusions of law. Points of error number six and nine, complain that the trial court abused its discretion by the admission of certain testimony at the trial, over timely objection.

Appellees bring one cross-point of error in which they assert that the trial court erred in failing to award appellees attorney's fees for appeal.

We disagree with each of appellants points of error, and with appellees cross-point of error, and, accordingly, we affirm the judgment of the trial court.

### STANDARD OF REVIEW

■ After trial to the court, the court entered its findings of fact and conclusions of law. Such findings of fact are of the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). In reviewing the sufficiency of the evidence to support the findings of fact, we must consider only the evidence and the reasonable inferences that can be drawn therefrom. *Cameron v. Terrell & Garrett,* 618 S.W.2d 535, 541 (Tex.1981). In considering no evidence points the court will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom and disregarding all contrary or conflicting evidence. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981).

■ Furthermore, this court may not substitute our conclusions for that of the finder of fact. Only when we find the evidence to be so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust may we reverse the findings of the trier of fact. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Cornelius, *Appellate Review of Sufficiency of the Evidence Challenges in Civil and Criminal Cases,* 46 Tex.B.J. 439. Suffice it to say that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

### FACTS

On June 26, 1987, the Zeretzkes, husband and wife, purchased a car from Milt Ferguson Motor Company. The vehicle was sold with a new car warranty of 5 years/60,000 miles.

Three months after purchase, the car lost oil pressure, and Mr. Zeretzke returned the vehicle to the dealership and, after it was repaired, was told "the repairs were done." Less than thirty days later, water leaked on the floorboard. That problem was not properly repaired because three weeks later, four inches of water covered the floorboard.

In May 1988, after complaints about engine noise, Ferguson Motor Company replaced the cam shafts, the bearings and cam gears and lifters and told appellee that the work had been done and that the car was in good shape. After the repairs the engine noise continued, and when Mrs. Zeretzke took the car in on two occasions to complain, she was told each time by the service manager that he could not hear the noise. Thus no further repairs were made. The oil leak problems continued through 1989 as did the noise in the engine.

In February, 1989 they took the vehicle to an independent repairman, a Mr. Wardell Gray. At this time the vehicle had 68,000 to 69,000 miles on it. Mr. Gray is not a certified mechanic, nor has he had any formal training with regard to GM engines.

After Mr. Gray's inspection of the vehicle, he told them that there were cracks in the engine block. When inspected by the dealership, on July 3, 1989, the cam gear noise was verified.

On October 19, 1989, this suit was instituted. The parties waived a jury trial and tried the cause to the judge, who, at the close of the evidence found for the Zeretzkes and awarded damages for repairs, loss of use and mental anguish.

## POINT OF ERROR NO. 1

Under point of error one, appellants contend that there is no evidence or insufficient evidence to support Finding of Fact No. 2 and Conclusion of Law No. 3 that defendants misrepresented that the goods or services were of a particular standard, quality or grade.

■ The trial court entered its Finding of Fact No. 2 that:

Plaintiffs are 'CONSUMER' as defined in § 17.45 of the DTPA.

Based upon this finding, the trial court entered its Conclusion of Law No. 3 that:

The Defendants, **GENERAL MOTORS CORPORATION and MILT FERGUSON MOTOR COMPANY** violated Tex. Bus. & Com.Code Ann. § 17.46(B)(5) AND (7), in representing to. Plaintiffs in May, 1988, that repairs had been properly performed and such conduct was the producing cause of Plaintiffs' damages.

A careful reading of appellant's Point of Error No. 1, reveals no complaint as to the Finding of Fact No. 2 that plaintiffs are consumers; accordingly, despite the language of the point of error, we need not address the court's finding that plaintiffs are consumers, absent a challenge; however we agree with the trial court that plaintiffs are consumers under the DTPA.

The gist of appellant's argument under Point of Error No. 1, is twofold; first, that the representations made by Ferguson Motor Company to the Zeretzkes concerning both the purchase and the repairs of the automobile were mere puffing and thus not actionable; and second, that there was no finding of agency between Ferguson Motor Company and General Motors, and that absent such finding, General Motors Corporation cannot be held liable.

First, we disagree with the contentions of appellants that because General Motors Corporation had no direct contact with the appellees when the automobile was purchased, it cannot be liable.

Appellees alleged, without exception, that:

Defendants' acts in selling said motor vehicle were committed knowingly and were the producing cause of Plaintiffs' damages as more fully set out hereafter. These were committed knowingly because Defendants herein knew of the problems Plaintiffs had with the vehicle and assured the Plaintiffs that the problems had been resolved when in fact they had not as evidenced by the fact that Plaintiffs had to return the vehicle for the same problems and the same problems still exist.

In support of these allegations, evidence was adduced that the vehicle was purchased as a new vehicle, on which a manufacturer's warranty was issued. During trial evidence was presented that the engine had a crack of manufacturer's origin. Before purchase, appellees were told that they would get better service out of the new vehicle than the Calais that they were driving which had been driven 80,000 miles without significant mechanical difficulties. After purchase, when mechanical difficulties arose, the car was taken in for repair, and appellees were assured that the problems of which they complained had been properly repaired when in fact the problems continued to exist.

In May 1988 Ferguson Motor Company replaced the cam shafts, the bearings and cam gears and lifters and told appellees that the work had been done and that the car was in good shape. After these repairs the engine noise continued, and when Mrs. Zeretzke took the car in on two occasions to complain, she was told each time by the service manager of Ferguson Motors that he could not hear the noise; yet when inspected on July 3, 1989, by the dealership, the cam gear noise was verified.

Evidence was adduced that before purchase of the car both Mr. and Mrs. Zeretzke had read pamphlets at the dealership, magazine and newspaper articles concerning the quality of the car as a "good, excellent motor vehicle." Furthermore, the salesman at the Ferguson Motor Company kept telling them "how good the car was and the quality of it," that it was a better car than the Calais that we had." The salesman told them that they would get as good or better service out of the car, than they had from the Calais.

It has been held that a consumer, without regard to privity, can recover against a manufacturer whose defective product causes the consumer to suffer injury. *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex.1977). In *Ford Motor Co. v. Lemieux Lumber Co.*, 418 S.W.2d 909 (Tex.Civ.App.—Beaumont 1967, no writ), the court permitted recovery directly against Ford who contended that no cause of action was proved against it because it was not a party to the sales contract. The court relied on the case of *United States Pipe and Foundry Co. v. City of Waco*, 130 Tex. 126, 108 S.W.2d 432 (1937) for the proposition that a manufacturer, who had made representations as to what the product would do even though there was no privity of contract between the parties, was liable. In *Lemieux* the defendant had also contended that a brochure could not be construed as an express warranty. The court disagreed, holding:

> a manufacturer should be held responsible for the advertising done by it regardless of the medium, whether it be by television, radio, billboard or brochure and other literature.

*Lemieux*, 418 S.W.2d at 911. Where a car buyer obtained a written warranty in connection with the purchase of the car, the repairs were performed by the dealership pursuant to a dealership agreement with GMC, and GMC paid the dealer for the completed warranty repairs, the plaintiff was a "consumer" of warranty repair service, *Tom Benson Chevrolet, Inc. v. Alvarado*, 636 S.W.2d 815, 821 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.).

We conclude that appellees were consumers as to both appellants under the Tex. Bus. & Com.Code Ann. § 17.41 *et seq.*, known as the Deceptive Trade Practices–Consumer Protection Act. ("DTPA").

The second thrust of appellants' argument under point of error one is that the representations made by Ferguson Motor Company concerning both the sale and the repairs to the automobile were mere puffing. We disagree.

■ We generally agree with the proposition that a seller must be given some latitude to advertise his wares and state generally his opinions as to the performance of the product in the future. *See Shaw Equipment Co. v. Hoople Jordan Constr. Co.*, 428 S.W.2d 835, 838–839 (Tex. Civ.App.—Dallas 1968, no writ); *Ryan v. Collins*, 496 S.W.2d 205, 210 (Tex.Civ. App.—Tyler 1973, writ ref'd n.r.e.).

■ Appellants rely strongly on *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459 (Tex. App.—Dallas 1990), *writ denied per curiam*, 800 S.W.2d 853 (Tex.1991). In *Autohaus* the court held that the salesman's misrepresentations were too general to be actionable. In *Autohaus* the plaintiff sought to purchase a Mercedes–Benz automobile. The salesman told the purchaser that:

> the Mercedes–Benz was the best engineered car in the world, and [he] probably would not find that [he] would ever encounter any mechanical difficulties.... [The salesman] joked that [the] only time loss would probably be when [the purchaser] would bring the car in to the agency for an oil and filter change every 75,000 miles.

These statements were couched partly in probabilities and partly in jest. We also note that the supreme court, in denying the application for writ of error stated: "We are not to be construed as approving or disapproving the analysis of the Court of Appeals." *Aguilar v. Autohaus, Inc.*, 800 S.W.2d 853 (Tex.1991). We further note that in the Court of Appeals opinion in *Autohaus*, there was a dissenting opinion.

We believe that the Court's reasoning in *Pennington v. Singleton*, 606 S.W.2d 682 (Tex.1980) is more applicable to the instant case. In *Pennington* a boat and motor were sold to a purchaser and the seller represented that it was in "excellent" condition, "perfect condition", "just like new"; when, in fact the gear housing was cracked.

The Court's language in *Pennington* is instructive:

> We do not agree with Singleton's argument that false statements about the boat's mechanical condition did not relate to its characteristics, uses, or benefits. Regardless of the reason, when a good does not have the characteristics it is represented to have, or perform as represented, the injury to the consumer is the same. There is no justification for excluding some misrepresentations and including others on the basis of the reason for their falsity.

> Subdivision (7) prohibits representing that a good is of a particular standard, quality, grade, style, or model if it is of another. Quality is a measure of degree; as to particular goods quality may be calibrated by standard or grade, as with eggs or meat, or specified by style or model, as with machinery. Even when specific categories are not devised, the good may still be described with more general words of quality. Words like 'excellent' and 'perfect' are words indicating a high degree of quality. Because the boat was in poor mechanical condition, its condition was of poor quality and the representations were false.

> The terms used in Sec. 7.46(b)(5) and (7) such as 'characteristics' or 'quality' are not defined in the DTPA. Therefore, they must be given their ordinary meanings. The general objective of subdivisions (5) and (7) is to ensure that descriptions of goods or services offered for sale are accurate. Misrepresentations, so long as they are of a material fact and not merely 'puffing' or opinion, are nevertheless actionable even though they are broad descriptions, such as were made to Pennington. The DTPA prohibits false general descriptions about the good, as well as misrepresentations pertaining to more specific information. Sometimes language only generally related to a product or its attributes will convey definite implications. *See* Shapo, *A Representational Theory of Consumer Protection: Doctrine, Function and Legal Liability for Product Disappointment*, 60 Va.L.Rev. 1109, 1330–33 (1974).

*Pennington*, 606 S.W.2d at 687. The Texas Supreme Court in a fraud case, stated, " 'Puffery' is an expression of opinion by a seller not made as a representation of fact." *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 729 (Tex.1982) (adopting definition of "puffery" given in *Gulf Oil Corp. v. Federal Trade Commission*, 150 F.2d 106, 109 (5th Cir.1945).

In the present case, before purchase, Mr. Zeretzke read pamphlets at the dealership, magazine articles, newspaper articles, and advertisements concerning the quality of the car as "a good, excellent motor vehicle." The salesman at the dealership kept telling appellees "how good the car was, and the quality of it" and that "it was a better car than the Calais that they had," that it "was a good car and that they would have no problems."

After the vehicle was purchased, when mechanical difficulties arose, the car was taken in for repairs, and appellees were assured that the problems of which they complained had been properly repaired when in fact the problems continued to exist.

When the knocking noise in the engine returned, after the repairs in May 1988, the auto was brought again to the dealer and appellees were told by the service manager that he couldn't hear anything, so no repairs were performed. Later, after appellees complained again, the dealership in July of 1989 diagnosed the noise to be cam gear noise. Furthermore there was evidence that the crack in the engine was of manufacturer's origin.

We conclude that the misrepresentations in this case are substantial misrepresentations of material facts and not just puffery as argued by appellants.

Appellants point of error one is overruled.

## POINT OF ERROR NO. 2 AND NO. 3

■ Under point of error two and three, appellants complain that the trial court erred in entering Finding of Fact No. 13 and Conclusion of Law No. 5 because there was no evidence or insufficient evidence that repairs performed by defendant Milt Ferguson Motor Company were not performed in a good and workmanlike manner or that Defendant breached the implied warranty to repair goods in a good and workmanlike manner.

First, appellants complain that there are no pleadings to support the trial court's Conclusion of Law No. 5 that:

> The Defendant, MILT FERGUSON MOTOR COMPANY, breached the implied warranty to repair Plaintiffs' vehicle in a good and workmanlike manner and this was a producing cause of Plaintiffs' damages.

Appellees pled in paragraph VI of their First Amended Petition that:

> Defendants' acts in failing to perform necessary repairs amounted to false, misleading and deceptive acts and practices in conduct of trade and commerce and in violation of § 17.46(b)5 and 7, and 17.-50(a)1, 2, and 3 of the Texas Business and Commerce Code.

This provision of the Code provides recourse to a consumer when the producing cause of his damages is a breach of an express or implied warranty.

In *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex.1987), the court held that to recover for breach of an implied warranty to repair, the plaintiff must show that the repairs were not performed in a good and workmanlike manner. Dissatisfaction alone is insufficient to prove a breach.

The evidence reveals that the vehicle had a crack in the engine of manufacturer's origin, and that appellees continued to have problems after repairs were undertaken. After repairs were performed in May of 1988, in which the cam, lifters, and cam gear were replaced, appellees continued to hear knocking noises in the engine, and

when they returned it for correction, the service manager told Mrs. Zeretzke that he could not hear any noise. Later appellees discovered two vertical cracks in the back of the engine, which had been there since the engine was manufactured.

We hold the evidence sufficient to uphold the court's Finding of Fact No. 13 that the repairs performed by Milt Ferguson Motor Company, were not performed in a good and workmanlike manner and to uphold its Conclusion of Law No. 5 that Milt Ferguson Motor Company breached its implied warranty which was a producing cause of plaintiffs' damages.

Points of error two and three are overruled.

## POINT OF ERROR NO. 4, NO. 5, AND NO. 6

Under points of error four, five, and six, appellants urge that Finding of Fact No. 8, and Conclusion of Law No. 6 are erroneous; first, because there is no evidence or insufficient evidence, or plaintiff failed as a matter of law to prove the predicate finding of a knowing violation of the DTPA, to allow recovery of damages for mental anguish; second, because there is no evidence or insufficient evidence, or plaintiff failed to establish as a matter of law that plaintiff, Jerry A. Zeretzke suffered mental anguish; and finally that the trial court abused its discretion and committed harmful error in admitting testimony of Jerry A. Zeretzke concerning mental anguish over the timely objection of defendants.

■ First, appellants argue that to recover mental anguish damages in a DTPA case, plaintiff must plead and prove either that the wrongful action which caused the suffering was willful or committed knowingly, and, further, that a physical injury resulted. In support of these arguments, they rely on *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115 (Tex.1984); *Brown v. American Transfer and Storage Company,* 601 S.W.2d 931, 939 (Tex.1980), *cert. denied* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); and *Ybarra v. Sal-*

*dana,* 624 S.W.2d 948, 952–953 (Tex.App.— San Antonio 1981, no writ).

We agree with appellant that in *Luna,* the court held:

> Mental anguish damages are recoverable when there is proof of a willful tort, willful and wanton disregard, or gross negligence. (Citations omitted.)
>
> . . . .
>
> In *Duncan* [*v. Luke Johnson Ford, Inc.* 603 S.W.2d 777] and *Farmers & Merchants State Bank* [*of Krum v. Ferguson,* 617 S.W.2d 918], we stated we would allow recovery of damages for mental anguish when there was proof that the wrongful act was committed in a grossly negligent manner. Gross negligence means that there was an 'entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.' *Burk Royalty Company v. Walls,* 616 S.W.2d 911, 920 (Tex.1981).
>
> . . . .
>
> We are not attempting to equate the terms gross negligence, 'knowingly,' 'willful' and intentional. These terms lie on a continuum with gross negligence being the lowest mental state and intentional being the highest. If grossly negligent conduct is sufficient to allow a plaintiff to recover mental anguish damages, then 'knowing' conduct is also sufficient.

Later the supreme court abolished proof of physical injury as a requirement to recover for negligent infliction of mental anguish. *St. Elizabeth Hospital v. Garrard,* 730 S.W.2d 649, 654 (Tex.1987). In *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex. 1983) the court authorized recovery for mental anguish damages without proof of physical injury or conduct worse than negligence.

The supreme court, in *St. Elizabeth Hospital v. Garrard,* spoke at length on the issue of mental anguish damages.

First the court recognized that the Garrards had not pleaded any intentional or wilful act, gross negligence, breach of contract, physical injury or a cause of action under the wrongful death or survival statutes. The court held that:

> Although the court of appeals incorrectly concluded that *Sanchez* eliminated the physical manifestation requirement in actions based on simple negligence, *we are convinced the rule serves as nothing more than an arbitrary restraint on the right of individuals to seek redress for wrongs committed against them.* (emphasis added)

Furthermore, in *St. Elizabeth Hospital v. Garrard,* in footnote 1, the court recognized the holding of the court in *Baptist Hosp. of Southeast Texas, Inc. v. Baber,* 672 S.W.2d 296, 299 (Tex.App.—Beaumont 1984), *writ ref'd n.r.e. per curiam,* 714 S.W.2d 310 (Tex.1986), that:

> (We believe [*Sanchez*] has now authorized the recovery for mental anguish without proof of physical injury or conduct worse than negligence).

To hold that mental anguish damages are only recoverable upon pleading and proof that the tort complained of was committed willfully or knowingly, would be to require a higher standard of proof, contrary to the holdings of *Sanchez, Baptist Hosp. of Southeast Texas, Inc. v. Baber,* and *St. Elizabeth Hosp. v. Garrard.*

In light of our analysis of these cases we believe that appellant's reliance on *Luna; Brown v. American Transfer & Storage Co.;* and *Ybarra v. Saldana,* is misplaced, and these cases are no longer the law with respect to the necessity to plead and prove that an act was committed willfully or knowingly to recover damages for mental anguish.

Second, as to appellants' argument that there is no evidence or insufficient evidence, or that plaintiff failed to establish as a matter of law that plaintiff, Jerry A. Zeretzke suffered mental anguish, we note that:

Mr. Zeretzke testified he felt like a ball of nerves all the time as a result of all this. Every time he drives the car he can smell oil. "It's embarrassing." He has suffered extreme distress and headaches.

Mrs. Zeretzke said she drives extensively and worries a lot if the car isn't operating right. She started smelling the car, and the noises became horrendous.

She and her husband were so angry they wouldn't talk to each other and did not enjoy good times anymore because she was so upset.

She said her nerves got so bad she couldn't sleep at night and she still has problems sleeping because you're "smelling the car." The smell gives you headaches and makes you very sick to your stomach to even travel in it.

We conclude that this evidence is some evidence of mental anguish. *See Metro Ford Truck Sales, Inc. v. Davis*, 709 S.W.2d 785 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); *City of Denton v. Page*, 683 S.W.2d 180 (Tex.App.—Fort Worth 1985), *rev'd on other grounds*, 701 S.W.2d 831 (1986); *Tom Benson Chevrolet, Inc. v. Alvarado*, 636 S.W.2d 815 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.).

■■■■ When an attack is made on the factual sufficiency of the evidence, we must examine all the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). Having considered and weighed all the evidence, we should set aside the findings of the fact finder only if it is so contrary to the overwhelming weight of the evidence so as to be manifestly unjust, a shock to the conscience, or a clear demonstration of bias. *Sosa v. City of Balch Springs*, 772 S.W.2d 71 (Tex. 1989); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The Texas Supreme Court has stated, on numerous occasions, that a court of appeals may not substitute its opinion for that of the trier of fact merely because it might have reached a different fact conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (Tex.1951).

We conclude this evidence to be sufficient to support the recovery on mental anguish.

Finally, appellants contend that it was error to admit the testimony of Jerry Zeretzke as to mental anguish over their timely objection; however, Appellants cite no authority for this proposition, and we are aware of none.

Appellants' points of error four, five and six are overruled.

## POINT OF ERROR NO. 7

■■■■ Appellants argue in point of error seven that Finding of Fact No. 10 and Conclusion of Law No. 6, concerning the loss of use of a vehicle, are erroneous because there is no evidence or insufficient evidence that plaintiffs' lost the use of their vehicle or suffered damages for the loss of use of their vehicle.

Appellees testified that they lost the use of their vehicle some fourteen days due to taking it in for servicing and the problems they had with the vehicle. Appellant Ferguson's sales manager testified that a rental rate for a replacement vehicle varies between $20–$23 per day. Thus the findings were within the limits of the testimony.

The supreme court held in *Luna*, 667 S.W.2d at 119, that to prove loss of use of an automobile, the plaintiff need not rent a replacement automobile or show any amounts actually expended for alternative transportation. The Court held: "To prove up loss of use, the reasonable rental value of a substitute automobile is sufficient evidence to support an award of actual damages." In *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 804 (Tex.App.—Dallas 1987, no writ), the Dallas Court of Appeals, referring to *Luna*, held that: "[t]his discussion by the supreme court makes it clear that a plaintiff may recover for loss of use of his automobile without actually having to *rent* another car."

Appellants' point of error seven is overruled.

## POINT OF ERROR NO. 8

■■■■ Point of error eight contends that defendants established as a matter of law

that plaintiffs' causes of action for misrepresentation were barred by limitations.

The record shows that appellants first learned of serious engine problems in May 1988 when, in response to repeated complaints of engine noise, Ferguson Motors replaced the cam, lifters and cam gear. Even after these repairs were made, Mrs. Zeretzke complained of the engine noise, and Ferguson's service manager said that he could hear nothing.

After a Mr. Gray worked on the engine in February 1989, the engine cracks were discovered. Suit was filed on October 18, 1989. Tex.Bus. & Com.Code Ann. § 17.41 *et seq.*, known as the Deceptive Trade Practices–Consumer Protection Act, at § 17.-565, provides that all actions brought pursuant to the act "must be commenced within two years after the date on which the false, misleading or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence" of the deceptive act. We conclude from the record that the suit was brought within the limitations period.

Appellants' point of error eight is overruled.

## POINT OF ERROR NO. 9

Point of error nine complains that harmful error was committed by the admission of testimony of Jerry A. Zeretzke concerning certain statements made by Ferguson Motor Company, over timely objection.

The following exchange took place during cross-examination of Jerry A. Zeretzke:

Q: You never took it to another GM dealership for the warranty repairs, did you?

A: No, because I was told that they did the work properly, so I was trying to give them the chance to do the work properly.

Ms. Gillette: I object to everything beyond the word "No" as being nonresponsive to my question.

The Court: I'll overrule the objection.

Appellants contend that this ruling was clearly erroneous and such error was rea-

sonably calculated to cause and probably did cause rendition of an improper judgment. We disagree that the trial court abused its discretion, in overruling the objection, and we conclude that the answer of Mr. Zeretzke, at its worst was harmless error.

## POINT OF ERROR NO. 10

Appellants, in point of error ten, complain that Finding of Fact No. 13 and Conclusion of Law No. 5 are erroneous because they are supported by no evidence or insufficient evidence, or that defendants established as a matter of law that plaintiffs failed to provide notice and an opportunity to cure the alleged breach of warranty.

■ Appellants contend that appellees failed to provide proper notice of their claim, thereby denying them the opportunity to cure the defects. This claim is without merit. First, a demand letter was sent on September 4, 1989, to Milt Ferguson Motor Company, and its receipt was admitted. Second, no complaint was made of the lack of notice in the trial court, either by way of special exception or plea in abatement. This issue must have been raised in the trial court to preserve error; it cannot be made for the first time on appeal. *See Metro Ford Truck Sales, Inc. v. Davis,* 709 S.W.2d 785, 788 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.)

Appellants point of error ten is overruled.

## APPELLEES' CROSS–POINT OF ERROR NO. 1

By way of cross-point, appellees complain that the trial court erred by its failure to award attorney's fees to appellees for this appeal.

Appellants respond to this cross-point by contending that appellees have waived the right to complain of the judgment on appeal because they failed to bring their objections to the trial court's attention; that the trial court acted within its discretion in denying appellees an award of attorney's fees on appeal; and that appellees have waived their right to complain of the judg-

ment on appeal because they have failed to properly brief their cross-point.

■ Appellants point out that at the close of trial the court announced judgment in favor of the Zeretzkes for certain damages including "10,000.00 attorneys' fees" and stated that "everything else is refused and rejected." There is no showing that appellees submitted additional proposed findings of fact and conclusions of law, entitling them to an award of attorney's fees on appeal. Absent pursuit of their quest for attorney's fees for appeal in the trial court, this point is waived and cannot be brought on appeal for the first time. *WLR, Inc. v. Borders*, 690 S.W.2d 663, 668–69 (Tex.App.—Waco 1985, writ ref'd n.r.e.). *See also West Texas Utils. Co. v. Irvin*, 161 Tex. 5, 336 S.W.2d 609, 611 (1960); *Transcontinental Gas Pipe Line Corp. v. American Nat'l Petroleum Co.*, 763 S.W.2d 809, 826 (Tex.App.—Texarkana 1988), *rev'd on other grounds*, 798 S.W.2d 274 (Tex.1990); *Intermarkets USA, Inc. v. C-E Natco*, 749 S.W.2d 603, 606 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

Appellees' cross-point is overruled.

The judgment of the trial court is affirmed.

BUTTS, Justice, dissenting.

I respectfully dissent to that portion of the majority opinion regarding damages for mental anguish. This cause of action is one for recovery of damages expressly and only under the Deceptive Trade Practices Act, TEX.BUS. & COMM.CODE ANN., art. 17.41 *et seq.* (Vernon 1987) and (Vernon Supp. 1991). The Act is not a codification of the common law. *See Smith v. Baldwin*, 611 S.W.2d 611, 619 (Tex.1980).

Appellants challenge finding of fact number 8:

Plaintiffs sustained extreme nervousness over the problems with the vehicle and worried about driving the car. Mrs. Zeretzke had problems sleeping and tremendous headaches.

Appellants also challenge that part of conclusion of law number 6 which awards each

plaintiff the sum of $7500.00 as damages for mental anguish. They argue there is no evidence or insufficient evidence that there was a *knowing* violation of the DTPA, upon which finding by the trier of fact an award for mental anguish damages must be grounded. Further, it is argued plaintiffs failed to establish as a matter of law that *Jerry A. Zeretzke* suffered mental anguish. Appellants also maintain that the court erred in considering, over their timely objection, Jerry's testimony concerning mental anguish.

In its landmark decision, *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984) the supreme court held that if "grossly negligent" conduct is sufficient to allow the consumer to recover for mental anguish, then "knowing" conduct is also sufficient. The first inquiry is whether the evidence is sufficient to prove that the complained-of conduct rises to the level of "knowing" conduct, and that is not addressed in the majority opinion, as it must be. Even if it is assumed that necessary element was proved, there is a second question: whether the evidence proves that Jerry actually suffered mental anguish.

In its findings of fact the trial court stated the basis of recovery to be § 17.-46(b)(5) and (7), (misrepresentations). A misrepresentation is not characterized as a negligent act under the DTPA, nor does negligence play a part in this case. In order to sustain a mental anguish damage award, the trial court had to find that the misrepresentations were made *knowingly* by the defendants. It is, therefore, significant that the trial court chose not to find the misrepresentations were made knowingly.

To further show that the trial court did not intend to make a finding that the misrepresentations were made knowingly, additional damages of $2000.00 were granted. In other words, the court did not treble the damages as it could have done. DTPA § 17.50 (Vernon Supp.1991) provides in pertinent part:

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. *If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000 ....*

    \*    \*    \*    \*    \*    \*

Section 17.45(9) defines "knowingly," and the trier of fact must make a specific finding that the defendant acted "knowingly." That was not done in this case.

With the decision in *Luna* the supreme court granted the consumer in a DTPA action the same basis, proof that the defendant acted "knowingly", to support a damage award for mental anguish. I would hold that the evidence was factually insufficient to meet the requirement of proof of knowing conduct. *See* § 17.45(9).

Even if that requisite element of the DTPA action were met, the evidence that Jerry suffered mental anguish falls far short of necessary proof. Headaches, problems with sleeping, and not enjoying good times because of being upset do not support a finding of mental anguish. *See Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796 (Tex.App.—Dallas 1987, no writ). I would agree that proof of mental anguish by Jerry was not established as a matter of law.

For these reasons and because the majority opinion holds that in this DTPA action appellants' reliance on *Luna* is misplaced, and that case is "no longer the law with respect to the necessity to plead and prove that an act was committed willfully or knowingly to recover damages for mental anguish," I respectfully dissent.