NO. 07-09-0236-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 17, 2010

KAREN RUTLEDGE,

Appellant

v.

CLINT ISLEY, Individually, CALVIN MICHELSON, Individually
and CBRC PROPERTIES, LLC

Appellees

FROM THE 207TH DISTRICT COURT OF COMAL COUNTY;

NO. C2003-1175B; HONORABLE CHARLES R. RAMSAY, PRESIDING

*Memorandum Opinion*

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Karen Rutledge (Rutledge) questions the trial court's directed verdict and appeals from a judgment entered against her. She had sued Clint Isley, Calvin Michelson, and CBRC Properties (collectively referred to as "CBRC") for damages allegedly arising from construction defects in a condomimium she bought from them. CBRC also appeals the trial court's refusal to award them attorney's fees since they

believed themselves to be prevailing parties. We reverse the judgment and remand the cause.

*Background*

Rutledge purchased a condominium from CBRC Properties in July 2002. Several months after doing so, she complained of alleged defects in the construction of the property. The defects included the continual leaking of water into the abode from under walls and through window frames. CBRC attempted to address the complaints, and its efforts to repair the defects were unsuccessful in part. Water or moisture still penetrated through outside walls and a window. This resulted in "growths" appearing at one or more of the sites experiencing the leakage. Pictures admitted into evidence also showed the presence of large "coffee" colored stains running atop baseboards and up walls in the guest bedroom area. According to Rutledge,

> [i]n the window in the -- in the guest bedroom/office, it is totally stained all the way, top, bottom, sides, windowsill, carpet, everything. The blinds are covered. It looks like somebody threw a tub of coffee grounds at it. It has a smell. When you go into that room, it's quite poignant.

Rutledge also encountered electrical defects, or at least she so testified. These included light switches failing to activate lights until some time (in several instances, hours) after being engaged. Once, the lights came on at night after she had fallen asleep. When they did, she awoke suddenly, was startled, and screamed.

All the defects, and conditions they created, went unremedied despite requests to have them cured. They also led Rutledge to abandon the condominium, secure alternate living quarters, and incur expense related to obtaining those alternate quarters.

2

Despite evidence of the foregoing being proffered to the jury, CBRC moved for a directed verdict. They contended that Rutledge had failed to present evidence of damages. This was allegedly so because she tendered no expert testimony about the costs of repairing the defects or the difference in value between the condominium as represented by CBRC and as it actually was. Such evidence purportedly was elemental to her causes of action. The trial court agreed and found "that there's not a proper measure of damages." Thus, it granted an instructed verdict in favor of CBRC and discharged the jury. It also refused to grant CBRC's request for attorney's fees as a prevailing party per the sales agreement.

*Directed Verdict*

We initially address whether the trial court erred in directing a verdict because there was no "proper measure of damages." In doing so, we note that the applicable standard of review is akin to that used in assessing the legal sufficiency of the evidence. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). It requires us to examine the evidence in a light most favorable to the party suffering the adverse judgment and decide whether there is any evidence of probative value to raise an issue of material fact. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.,* No. 05-1076, 2009 Tex. App. LEXIS 113 at *23 (Tex. March 27, 2009). That is, we credit favorable evidence if reasonable jurors could do so and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d at 827.

The record before us discloses that Rutledge alleged various causes of action via her live pleadings. One implicated the Deceptive Trade Practices Act and its provisions relating to deceit and breached warranty. A claimant who successfully pursues such

3

claims normally is entitled to recover economic damages. TEX. BUS. & COMM. CODE ANN. §17.50(b)(1) (Vernon Supp. 2009). Within the latter measure are compensatory damages for pecuniary loss, including costs of repair and replacement. *Id.* §17.45(11). Within the category of pecuniary loss falls the measure of damages known as loss of use. Under it, one may recoup expenses related to acquiring alternate means to do that denied him by the deceptive trade practice. For instance, the reasonable expense of renting an automobile has been held to fall within the category. *Allied Towing Service v. Mitchell*, 833 S.W.2d 577, 585 (Tex. App.–Dallas 1992, no writ) (stating that the reasonable rental value of a substitute vehicle is sufficient evidence of actual damages), *accord Milt Ferguson Motor Co. v. Zeretzke*, 827 S.W.2d 349, 358 (Tex. App.–San Antonio 1991, no writ) (stating the same). So too can it include the expense of having to pay a mortgage on a second house acquired because the first was not completed as promised. *Norwest Mortg., Inc. v. Salinas*, 999 S.W.2d 846, 864 (Tex. App.–Corpus Christi 1999, pet. denied).

Here, Rutledge testified that she lost the use of her home from November 2006 through the date of trial due to the defects and the conditions resulting therefrom, or at least a reasonable jury could have so interpreted her testimony. She further stated that during the period she had to pay rent on an apartment for one year at $995 per month, that then she had to make payments on a house at the rate of $1,545 per month through trial, and that while those payments were being made she had to continue paying the $878 monthly mortgage payment on her condominium. Like the defendant in *Allied*, CBRC said nothing about Rutledge being unqualified to testify about the reasonableness of those expenses. Nor did it object on the basis that they were not

indicative of the reasonable value of acquiring alternative living quarters while the construction defects remained existent. Additionally, we see little difference between Rutledge having to acquire alternative living quarters and Mitchell (in *Allied*) having to acquire a rental car, or Salinas (in *Norwest*) having to buy another home due to a purported deceptive trade practice. So, like the panels in those cases, we too hold that the evidence proffered by Rutledge and illustrating what she paid to live elsewhere was some evidence of loss of use and, therefore, of some actual damages. Given this, the trial court harmfully erred in granting the directed verdict on the basis it did.

Finally, because the appellate issue raised by CBRC (that is, whether it was a prevailing party entitled to attorney's fees) was and is dependent upon our affirming the directed verdict, we need not consider it. Accordingly, the final judgment of the trial court is reversed and the cause is remanded.


Brian Quinn
Chief Justice